**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210208-U

Order filed February 17, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0208 Circuit No. 13-CF-1667 |
| CHRISTOPHER L. THOMPSON, | ) ) ) | |
| Defendant-Appellant. | ) ) | Honorable David M. Carlson, Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court failed to comply with this court's order to hold an evidentiary hearing to determine the nature of the extraneous information the jurors were exposed to and its resulting prejudice.

¶ 2     Defendant, Christopher L. Thompson, appeals from the Will County circuit court's denial of his motion for new trial, arguing that jurors were exposed to prejudicial extraneous information from a newspaper article. Alternatively, defendant argues that the court failed to fully comply with our prior order to hold an evidentiary hearing on the jurors' exposure to

extraneous information. We reverse the court's denial of defendant's motion and remand for further evidentiary hearing with directions.

¶ 3                                      I. BACKGROUND

¶ 4        The State charged defendant with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2012)), stemming from the shooting death of Gerardo Franchini on or about August 3, 2013. Prior to trial, pursuant to defendant's motions *in limine*, evidence of defendant's prior criminal history was excluded and any reference to prior police involvement was redacted from the recording of defendant's police interrogation.

¶ 5        On February 8, 2016, defendant proceeded to trial with a six-person jury. During *voir dire*, the jurors all indicated that they had not read or heard anything regarding defendant's case. The jurors were admonished by the court not to conduct any independent research or investigation and not to discuss the case with others or expose themselves to information about the case through the newspaper or television. After five hours of deliberation, the jury found the defendant guilty.

¶ 6        Several days after the verdict was entered, juror Darlene Rodriguez sent a letter to the court. The letter indicated that: (1) the first alternate, juror Karen Betzwiser, learned from the newspaper that juror John Jankowski had been excused from the jury; (2) during deliberations, Betzwiser and juror Kevin Kuell indicated that defendant had been arrested before, even though no evidence of defendant's criminal history was presented at trial; and (3) in reference to the recording of defendant's police interrogation, juror Randy Fortner stated that "these guys are probably all high on drugs." Two newspaper articles regarding the defendant's case were attached to Rodriguez's letter. One article reported news of the ongoing trial and the dismissal of Jankowski and the other reported on the criminal history of both defendant and the victim.

2

Defendant filed a supplemental motion for new trial, which was denied. Defendant was sentenced to 60 years' imprisonment, plus a term of natural life.

¶ 7 On appeal, defendant argued, among other things, that the court abused its discretion in denying defendant's motion for new trial based on Rodriguez's letter to the court, contending that the letter indicated that "defendant was deprived of his Sixth Amendment right to a trial by an impartial jury and that the trial court denied his right to due process by not granting a new trial or at least an evidentiary hearing. The defendant also argue[d] that the juror's letter implie[d] a racial bias." *People v. Thompson*, 2018 IL App (3d) 160604-U, ¶ 23. We found that the "letter established that the jury had been exposed to some form of improper extraneous information. At a minimum, the letter indicates that there was information given to the jury that was specifically excluded by the court." *Id.* ¶ 25. We acknowledged that the dismissal of Jankowski may not have influenced the jury's verdict, however, the newspaper articles contained other, potentially prejudicial information. *Id.* Accordingly, we found that an evidentiary hearing was necessary to make that determination. *Id.*

¶ 8 On remand, the court had the State subpoena all the jurors for an evidentiary hearing in August 2019. Prior to the hearing, defense counsel moved to withdraw based on a change in employment which would preclude him from continuing to represent defendant. The motion was denied. A week before the hearing, defense counsel again moved to withdraw based on a deterioration of his relationship with defendant. During a hearing on the subsequent motion to withdraw, the court read a letter written by defendant at his insistence and, thereafter, recused itself. The case was reassigned to Judge David Carlson.

¶ 9 Upon reassignment, Judge Carlson quashed all the subpoenas that had been issued for the jurors prior to the recusal and indicated that, unless specifically directed by this court, he would

not bring the jurors in to testify. The parties held several hearings discussing our order and how to proceed. Eventually, the court partially relented and allowed the State to subpoena Rodriguez.

¶ 10 On March 10, 2020, an evidentiary hearing was held. Rodriguez testified that she wrote the letter that had been sent to the court shortly after the trial concluded. Rodriguez confirmed the contents of the letter and stated that it was true. Rodriguez indicated that no one stated that the information revealed by Kuell and Betzwiser regarding defendant's prior arrests came from outside information. Rodriguez believed it to be a "generalization or conclusion that they came up with by hearing how [defendant] talked or the way he interacted at the police station." Rodriguez testified that this information did not change her mind, however, it did make her view the recording of defendant's interrogation differently.

¶ 11 Regarding Fortner's statement, Rodriguez testified that she did not mean to convey a racial bias in her letter and believed the statement was based on lifestyle as opposed to race. She indicated that Fortner's statement affected her verdict. When questioned further, Rodriguez explained that her verdict changed after watching defendant's police interrogation a second time and that change did not occur because of any extraneous information, stating that they "made a list on what [they were] going to be looking at in the video, then what [they] saw in the video. Then [they] went back. When [they] went back in there, [they were], like; trying to put all these pieces together. That's why [her] decision had changed from after that time. It wasn't because people were telling [her], oh, [defendant]'s been arrested before." Rodriguez testified that none of the jurors made racial comments.

¶ 12 No further witnesses were called. During arguments, the State argued that:

> "the question is, do the jurors *** who make the statements to our juror about
> [defendant's] past history and the fact that they may have been involved in some

4

kind of drug dealing, are they doing that because they are making that generalization from evidence adduced at the trial? Or did those jurors, in fact, see that in the paper? And if they did, that's the extraneous information.

If all they are doing is making a generalization, judge, that, oh, [defendant] and Mr. Franchini, they must be drug dealers and the way [defendant] acted in that interview shows he must have been in trouble with the police before, then nothing outside the trial has come in to influence the verdict.

But if they read the paper and the paper did have that information in it, then, okay, well, there's your extraneous information."

The court denied defendant's motion for new trial. Defendant appeals.

¶ 13                                                    II. ANALYSIS

¶ 14        Defendant asserts that the circuit court erred when it denied his motion for a new trial due to the jurors' exposure to prejudicial extraneous information, arguing that Betzwiser read newspaper articles relating to the case and conveyed that information to other jurors. Specifically, defendant points to Betzwiser's indication that she learned from the newspaper that Jankowski had been excused and Kuell and Betzwiser informing the jurors that defendant had been previously arrested, information that was readily available in contemporary newspaper articles. Alternatively, defendant requests that we reverse the court's denial of his motion for new trial and again remand for a full evidentiary hearing on the matter of any extraneous information that the jurors were exposed to, arguing that the court erred in failing to comply with this court's prior order to conduct an evidentiary hearing where the court failed to call Betzwiser as only she could testify to what extraneous information she exposed herself to.

5

¶ 15     We first consider whether the court complied with our prior order. Whether a circuit court complied with a reviewing court mandate is a question of law, subject to *de novo* review. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 352 (2002). A circuit court must obey "the clear and unambiguous directions in a mandate issued by a reviewing court." *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982).

¶ 16     In defendant's first appeal, we found Rodriguez's letter established that the jurors had been exposed to some form of improper extraneous information, the extent of which was unclear. *Thompson*, 2018 IL App (3d) 160604-U, ¶ 25. We remanded for an evidentiary hearing to determine the nature of the extraneous information to which the jurors had been exposed and whether prejudice resulted. *Id.*

¶ 17     Specifically, we previously found that, at a minimum, the jurors had been exposed to extraneous information about the discharge of Jankowski from another juror who read a newspaper article. *Id.* Two articles had been attached to Rodriguez's letter. One article contained information about defendant's criminal background which had been specifically excluded by the court.

¶ 18     The evidence, from Rodriguez's letter and her subsequent testimony on remand, demonstrates that Betzwiser read at least one newspaper article. The letter also demonstrates that Kuell and Betzwiser somehow knew that defendant had been previously arrested and implicated Fortner in a comment that may have indicated a racial bias. While it was appropriate and necessary to call Rodriguez to address issues of foundation and credibility, it is also necessary to examine, at minimum, Betzwiser, who is alleged to have read extraneous newspaper articles pertaining to defendant's case.

6

¶ 19    How Betzwiser knew about defendant's prior arrests is completely speculative without her testimony. It is possible that Betzwiser read the newspaper article regarding this. It is also possible that she came to that conclusion from the evidence presented at the trial. We cannot know the extent of the exposure to extraneous information without Betzwiser's testimony. As the prosecutor below pointed out, if Betzwiser came to this conclusion from generalizations about defendant's demeanor and speech on admitted exhibits, that is not extraneous evidence. However, if she learned this from the newspaper, which is a reasonable possibility, that could certainly constitute improper extraneous information that could influence the verdict. Clearly, the court must determine the nature and extent of the extraneous information to determine any resulting prejudice.

¶ 20    We take no position on whether the motion for new trial should be granted. It remains our order that a full evidentiary hearing is necessary for the circuit court to determine the nature and extent of the extraneous information that the jurors were exposed to and whether that exposure was prejudicial or harmless. Only after having all the information and making that determination, will the circuit court be able to rule on defendant's motion and this court be in a position to review it. The failure of the circuit court to follow the prior order of this court has generated another appeal, additional public orders at the trial and appellate levels, and a potential risk that when a proper hearing is finally held, the evidence and result could be compromised.

¶ 21    We understand that the examination of jurors is a sensitive matter. While questions may not be asked merely to show "the motive, method, or process by which the jury reached its verdict," jurors may be questioned regarding the specific nature of the extraneous information to which they were exposed. *People v. Willmer*, 396 Ill. App. 3d 175, 181 (2009). Accordingly, we remand with specific directions for the circuit court to: (1) hold an evidentiary hearing to

determine the specific nature of the extraneous information to which the jury was exposed during its deliberations; (2) allow the examination of Betzwiser; and (3) allow the examination of any additional jurors that the parties deem necessary and relevant to the matter. Defendant requests that a new judge be assigned to conduct the evidentiary hearing on remand. We accede to that request and direct this matter to be reassigned to a new judge on remand. See *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 45 ("Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) gives a reviewing court, in its discretion, the power to reassign a matter to a new judge on remand.").

¶ 22                                    III. CONCLUSION

¶ 23        The judgment of the circuit court of Will County denying defendant's motion is reversed and remanded with directions.

¶ 24        Reversed and remanded with directions.