**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230680-U

Order filed February 4, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-23-0680 |
| v. | ) ) | Circuit No. 13-CF-1667 |
| CHRISTOPHER L. THOMPSON, | ) ) | Honorable Carmen Julia Goodman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court did not abuse its discretion in denying the defendant's motion for a new trial.

¶ 2     The defendant, Christopher L. Thompson, appeals from the Will County circuit court's denial of his motion for a new trial, arguing the court erred where the evidence showed the jurors were racially biased against him and exposed to prejudicial extraneous information concerning his arrest history. Alternatively, the defendant argues he was denied a full and fair appeal where the record is incomplete due to the circuit court's failure to follow this court's edicts on remand.

¶ 3                                    I. BACKGROUND

¶ 4        At the outset, we note this is the defendant's third appeal before this court, and we only present a factual recitation necessary to reach our decision. A full reading of this case's history is provided in *People v. Thompson*, 2018 IL App (3d) 160604-U (*Thompson I*), and *People v. Thompson*, 2023 IL App (3d) 210208-U (*Thompson II*).

¶ 5        The State advanced to trial on one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)). Evidence of the defendant's criminal history was excluded and any reference to prior police involvement was redacted from the recording of the defendant's police interrogation. The defendant proceeded with a six-person jury consisting of: Darlene Rodriguez, David Alberts, Kevin Kuell, John Jankowski, Randy Fortner, and Eric Bell. Thereafter, Jankowski was excused from the jury and the first alternate, Karen Betzwiser, replaced him. Following five hours of deliberations, the jury found the defendant guilty.

¶ 6        Several days after the verdict was entered, Rodriguez sent a letter to the court, stating: (1) during the trial, Betzwiser learned from a newspaper article that Jankowski had been excused from the jury; (2) during deliberations, Betzwiser and Kuell indicated that the defendant had been arrested before, even though no evidence of the defendant's criminal history was presented at trial; and (3) in reference to the recording of the defendant's police interrogation, Fortner stated that "these guys are probably all high on drugs." Two newspaper articles regarding the defendant's case were attached to the letter. One article reported news of the ongoing trial and the dismissal of Jankowski and the other reported on the criminal history of both the defendant and the victim. Defendant filed a motion for a new trial, which the court denied. Defendant was sentenced to 60 years' imprisonment, plus a term of natural life. The defendant appealed.

2

¶ 7        In *Thompson I*, the defendant argued the court abused its discretion in denying his motion for a new trial based on Rodriguez's letter to the court, contending that the letter indicated he "was deprived of his Sixth Amendment right to a trial by an impartial jury and that the trial court denied his right to due process by not granting a new trial or at least an evidentiary hearing. The defendant also argue[d] that the juror's letter implie[d] a racial bias." *Thompson*, 2018 IL App (3d) 160604-U, ¶ 23. This court found the "letter established that the jury had been exposed to some form of improper extraneous information. At a minimum, the letter indicate[d] that there was information given to the jury that was specifically excluded by the court." *Id.* ¶ 25. We acknowledged that the dismissal of Jankowski may not have influenced the jury's verdict, however, the newspaper articles contained other potentially prejudicial information. *Id.* Accordingly, an evidentiary hearing was necessary to make that determination. *Id.*

¶ 8        On remand, the circuit court directed the State to subpoena all the jurors for an evidentiary hearing. Thereafter, the case was reassigned to another judge who quashed the subpoenas, stating he would not bring the jurors in to testify unless specifically directed to do so by the appellate court. Eventually, after several discussions with the parties, the court allowed an examination of Rodriguez.

¶ 9        Regarding Fortner's statement that "these guys are probably all high on drugs," Rodriguez testified she did not include it in the letter to convey a racial bias and believed the statement was based on lifestyle as opposed to race. Specifically, Rodriguez thought the statement was a generalization about the type of person the defendant was. She testified that no juror provided actual information that the defendant had a prior arrest history, and the jury came to this conclusion after seeing defendant's interaction with the police. For instance, the defendant asked the police "what do I need to do to make this go away[?]" The jurors questioned what type of person spoke

3

to the police in this manner and concluded the defendant was comfortable because he had been in this situation before and was trying to find a way out. Rodriguez testified that none of the jurors made racial comments. Defense counsel informed the court that he was not inclined to call any additional witnesses and stood on the evidence as presented. The matter was continued, and defense counsel informed the court they had "conducted the full evidentiary hearing" required on remand. The court denied the motion, and the defendant appealed.

¶ 10 In *Thompson II*, this court concluded another evidentiary hearing was necessary because Betzwiser read at least one newspaper article, Kuell and Betzwiser somehow knew the defendant had been previously arrested, and Fortner's comment may have indicated a racial bias. *Thompson*, 2023 IL App (3d) 210208-U, ¶ 18. On remand, the court was required to determine the nature and extent of the extraneous information and whether it resulted in any prejudice. *Id.* ¶ 19. The matter was remanded for the court to "(1) hold an evidentiary hearing to determine the specific nature of the extraneous information to which the jury was exposed during its deliberations; (2) allow the examination of Betzwiser; and (3) allow the examination of any additional jurors that the parties deem necessary and relevant to the matter." *Id.* ¶ 21.

¶ 11 On remand, the case was reassigned to another judge. The State informed the court that only four of the six jurors were available to testify as Alberts was deceased and Fortner no longer lived in the United States. The parties stipulated to Rodriguez's testimony from the prior hearing. The hearing proceeded where Bell, Kuell, and Betzwiser testified, and the parties were each given the opportunity to examine the jurors.

¶ 12 Bell testified he did not remember any discussion regarding the defendant's prior arrests, the defendant's appearance, or anything from outside the trial that came into the jury room. Bell provided he did not view any outside material regarding the case while the trial was pending, nor

4

did race play a role in his verdict. Bell stated no one in the jury room brought up that the defendant had an arrest history other than the arrest in the case itself. Bell did not think there was a comment made about individuals or the defendant being a drug user.

¶ 13 Kuell testified he did not recall there being a discussion during the deliberations about the defendant having an arrest history or his appearance. When asked if Kuell recalled discussions during any point during the trial, he explained he or someone else may have commented that the defendant had probably been in trouble with the law previously. Kuell agreed his observations led him to believe the defendant had a prior criminal history. Kuell stated he did not view any outside material about the case while it was pending, no outside information was brought into the jury room, and race did not play a role in his verdict.

¶ 14 Betzwiser testified she did not recall any discussion regarding the defendant having an arrest history or his appearance. She recalled some jurors believed that the defendant had a prior criminal history, and she understood this to be a generalization. However, the generalization was not based on his appearance. She stated she did not view any outside material regarding the case while it was ongoing, no outside information was brought into the jury room, she did not know the defendant had prior arrests, and race did not play a role in her verdict.

¶ 15 Thereafter, the State provided its investigator had spoken with Fortner, and a remote hearing was to be arranged. The matter was continued. When the parties reappeared, the State informed the court it was unable to secure a remote hearing to examine Fortner despite repeated attempts. The defendant provided he had no further evidence to present. The court denied the defendant's motion for a new trial and noted Rodriguez indicated the comment regarding the defendant having prior arrests did not come from an outside source and believed the comment was a generalization, Rodriguez did not interpret Fortner's statement about drugs to convey a racial

5

bias but rather it was a comment about lifestyle, and all available jurors testified they did not view outside material and race did not play a role in their verdict. The defendant filed a motion to reconsider, which the court denied. The defendant appeals.

¶ 16                                    II. ANALYSIS

¶ 17        On appeal, defendant argues (1) the court erred in denying his motion for a new trial where jurors exhibited racial bias toward him and were exposed to prejudicial extraneous information regarding his arrest record and (2) his right to a direct appeal has been denied where the record is incomplete due to the circuit court's failure to follow this court's edict on remand.

¶ 18        The circuit court's ruling on a motion for a new trial is reviewed for an abuse of discretion. *People v. Willmer*, 396 Ill. App. 3d 175, 181 (2009). An abuse of discretion occurs when the court's decision is arbitrary, fanciful, or where no reasonable person would have taken the position adopted by the court. *People v. Heineman*, 2023 IL 127854, ¶ 59. Here, while the defendant places much emphasis on the court's comments when denying his motion, "[e]rror in the trial court's analysis is irrelevant because we review judgments, not reasoning." *People v. Valladares*, 2022 IL App (1st) 1200161-U, ¶ 26.

¶ 19                                    A. Juror Bias

¶ 20        A defendant has the right to a trial before an impartial and unbiased jury, specifically, one capable and willing to decide the case solely on the evidence before it. *People v. Runge*, 234 Ill. 2d 68, 102-03 (2009). Where the defendant makes allegations of juror bias and the court makes an inquiry, the court must consider the facts and circumstances as to whether a fair trial had been interfered with, and the most controlling considerations are the character and nature of the allegedly prejudicial information or acts. *Id.* at 105-06. Each case must be determined on its own facts and circumstances, and deference must be accorded to the circuit court on the question of

6

bias because it can appraise the jurors face to face. *Id.* A trial before a biased jury constitutes structural error and requires reversal. *People v. Glasper*, 234 Ill. 2d 173, 201 (2009).

¶ 21    After a careful review of the record and based on the facts and circumstances of this case, we conclude the circuit court did not abuse its discretion in denying the defendant's motion for a new trial on grounds of racial bias.The jurors who testified stated that race did not play a role in their decision, and they could not recall a conversation during deliberations concerning race. See *Dennis v. United States*, 339 U.S. 162, 171 (1950) ("One may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter."). Rodriguez's interpretation of Fortner's comment that "these guys are probably all high on drugs," was that it concerned the defendant's lifestyle as portrayed through the evidence presented at trial. She disagreed that she was suggesting to the court that Fortner's comment was about race. Further, the comment that the defendant had been arrested before was based on what the jury saw in the recording of the defendant's interrogation. For example, the defendant spoke to the police in a comfortable manner and attempted to "make this go away." This was a proper and reasonable inference. Accordingly, the defendant's allegation that these comments indicated a racial bias was speculative (*Thompson*, 2023 IL App (3d) 210208-U, ¶ 18), and after a proper inquiry occurred, is unfounded. Thus, these comments must be taken at face value without any evidence to the contrary. The court was in the best position to view the jury, make credibility determinations, and determine the character and nature of these comments. We find nothing in the record to undermine the court's determination. As explained by the United States Supreme Court:

7

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

¶ 22    In reaching this conclusion, we disagree with the defendant that he is entitled to a new trial because he was not able to question Fortner regarding his comment that "these guys are probably all high on drugs." The defendant contends that only the State was permitted to contact the jurors in this case, so the State's unsuccessful contact with Fortner should not be held against him. When the matter reconvened before the court in preparation of Fortner's remote testimony, the State informed the court that its investigator was unable to make these arrangements with Fortner despite repeated attempts. The defendant merely provided he had no further evidence and the record is devoid of any indication that he asked for a continuance or offered any solution in an attempt to secure Fortner's testimony. The defendant did not argue that the State failed to exercise due diligence or that its attempts were otherwise unsatisfactory, nor did he discuss the necessity of Fortner's testimony. Assuming error occurred, the invited error rule states "a party cannot complain of error that it brought about or participated in." *People v. Hughes*, 2015 IL 117242, ¶ 33. Thus, the defendant cannot now complain that he was not able to question Fortner.

¶ 23                              B. Extraneous Information

¶ 24    Next, the defendant argues he was entitled to a new trial because the jury was exposed to prejudicial extraneous information concerning his arrest record. "Where a jury has been exposed to improper extraneous information, reversal of the jury's verdict is not automatic." *Willmer*, 396

8

Ill. App. 3d at 181. The party challenging the verdict must establish prejudice by showing the extraneous information relates directly to the case and it may have influenced the verdict. *Id.* After this showing, the burden shifts to the nonmoving party to establish the exposure was harmless. *Id.* If the nonmoving party is unsuccessful, the verdict cannot stand. *Id.* "[T]he standard to be applied is whether the conduct involved such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process." (Internal quotation marks omitted.) *People v. Hobley*, 182 Ill. 2d 404, 458 (1998).

¶ 25     Here, we also conclude the court did not abuse its discretion in denying the defendant's motion on grounds of the jury being exposed to extraneous information. In *Thompson II*, this court gathered (1) Betzwiser read at least one newspaper article as she was aware Jankowski was excused from jury duty and (2) somehow both Kuell and Betzwiser knew the defendant had been previously arrested. *Thompson*, 2023 IL App (3d) 210208-U, ¶ 18. On remand, Kuell and Betzwiser testified that they did not recall a discussion as to the defendant's arrest history. Kuell thought that he perhaps made a comment that the defendant had previously been arrested before, but this comment was based on his observations during the trial and not any extraneous information. Betzwiser recalled this comment and understood it to be a generalization. Therefore, the record demonstrated Kuell and Betzwiser did not have actual knowledge of the defendant's arrest record and were not exposed to any extraneous information in this regard.

¶ 26     We acknowledge that Betzwiser testified that she was not exposed to any extraneous information regarding the case, in direct contradiction to Rodriguez's letter claiming Betzwiser knew Jankowski was excused from jury duty from a newspaper article. However, (1) we reiterate the court was in the best position to view the jury and make credibility determinations and (2) the parties did not question Betzwiser as to this contradiction. At most, the evidence demonstrated

9

Betzwiser learned of Jankowski's excusal from the one newspaper article that discussed the events of the ongoing trial, which was not the same article that discussed the defendant's criminal history. Thus, any extraneous information the jury was exposed to, *i.e.*, the article discussing Jankowski's excusal from the jury, was harmless. See *People v. Torres*, 54 Ill. 2d 384, 390 (1973) (the jury's minimal exposure to media coverage of the case did not prejudice the defendant), *overruled on other grounds by People v. Royse*, 99 Ill. 2d 163, 170 (1983).

¶ 27                                                C. The Record

¶ 28        As a final matter, the defendant argues the record is incomplete due to no fault of his own. Specifically, had the circuit court complied with this court's first remand, all jurors could have been examined closer to the time of the trial and recall the events that transpired.

¶ 29        The defendant points to no evidence that either Alberts or Fortner would have been available on the first remand, and we decline to undertake such a search on his behalf. See *People v. Givens*, 237 Ill. 2d 311, 323-25 (2010) (a court of review has no duty to search the record to find support for the appellant's claim of error and must refrain from doing so when it would have the effect of transforming the court's role from jurist to advocate). Further, when the case was before the circuit court on the first remand, defense counsel informed the court that he was not inclined to call any additional witnesses and stood on the evidence presented (Rodriguez's testimony). *Supra* ¶ 9. "[A] party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). While this court later found in *Thompson II* that the circuit court failed to conduct a proper inquiry on remand per our instruction, that is a separate issue from the defendant's position on remand and the claim he now raises that the record is incomplete due to no fault of his own.

¶ 30    Finally, although it had been years since the trial and the jurors expressed it may have been difficult to recall some details, they answered unequivocally that neither race nor extraneous information was discussed during deliberations or played a role in their verdict. The court's ruling is not an abuse of discretion merely because two jurors were unavailable. See *People v. Barnett*, 2023 IL App (4th) 220402-U, ¶ 72 (stating the court does not abuse its discretion merely for failing to examine all jurors in these cases); *People v. Thompson*, 2022 IL App (5th) 190317-U, ¶ 78 (rejecting the defendant's argument pertaining to allegedly prejudicial extraneous information where only 9 of the 12 jurors testified).

¶ 31    As such, we find it necessary to reject the cases the defendant relies on for this argument as they are inapposite. See *People v. Ramos*, 295 Ill. App. 3d 522, 526-27 (1998) (granting the defendant a new trial where neither a report of proceedings or bystander's report were prepared for appeal due to defense counsel's failure); *People v. Appelgren*, 377 Ill. App. 3d 137, 142-43 (2007) (granting the defendant a new trial where an audiotape was missing and was necessary for meaningful review); *People v. Seals*, 14 Ill. App. 3d 413, 414 (1973) (granting the defendant a new trial where a transcript was needed to resolve the defendant's claim and the State failed to comply with the court's order to prepare a bystander's report if a transcript was not available). The defendant cites no authority for the proposition that the unavailability of jurors in such a circumstance necessitates a new trial.

¶ 32    For the foregoing reasons, the circuit court did not abuse its discretion in denying the defendant's motion for a new trial.

¶ 33                              III. CONCLUSION

¶ 34    The judgment of the circuit court of Will County is affirmed.

¶ 35    Affirmed.